UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

AMANDA HOWARD, Individually and as
Mother, Legal Guardian and Next Friend of
DANIELLE HOWARD                                                                    PLAINTIFFS

v.                                                                  CIVIL ACTION NO. 1:07CV217

MISSISSIPPI DEPARTMENT OF CORRECTIONS,
a state agency, JUSTIN BROWN, an individual
and NATHAN BLEVINS, an individual                                                  DEFENDANTS

## ORDER

This cause comes before the court on the motions of defendants for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiffs Amanda and Danielle Howard have responded in opposition to the motion. The court, having considered the memoranda and submissions of the parties, is prepared to rule.

This case involves, *inter alia*, 42 U.S.C. § 1983 excessive force claims asserted by plaintiffs against the Mississippi Department of Corrections (MDOC) and two of its officers arising out of a case of mistaken identity. On September 7, 2006, several MDOC officers were searching for Latasha Raspberry, who had been convicted on drug charges and ordered to report for drug treatment as part of her probation. The officers had been given information that Raspberry would be driving with another white female in a red Ford Mustang from the direction of the Alabama border. Unfortunately for plaintiffs, they also fit this description, and their vehicle was stopped by several MDOC officers in Lowndes County.

1

At the time their vehicle was stopped, Danielle, who was sixteen years old and in the late stages of pregnancy, was riding in the passenger side. The plaintiffs were on their way back home from a hospital visit related to Danielle's pregnancy, and she still wore a hospital armband on her wrist. In a subsequent hearing involving plaintiffs' criminal complaint against MDOC officer Justin Brown,[1] Danielle testified that, after her car was pulled over, Brown ordered her to "get out of the car, get out of the car now." Danielle testified that she knew Brown was a law enforcement officer but that "I didn't know who he was talking to, so I didn't just jump out of the car, you know, because I was eight and a half months pregnant."[2] Danielle testified that Brown then "jerked my door open, pulled me out of the car and slammed me against the car belly first." Danielle testified that she had "bruises on her arms from where he jerked me so hard" out of the car.

Danielle's mother Amanda corroborated her testimony regarding Brown's actions, and they both testified that Danielle was wearing clothing which clearly revealed that she was pregnant. Both likewise testified that Danielle told Brown that she was pregnant but that he responded that he "didn't give a [expletive deleted]." Amanda testified that MDOC officer Nathan Blevins, who knew Raspberry, then checked her ID, confirmed that she was not Raspberry and told the other officers that they had the wrong people. Blevins, who was driving in a different vehicle than Brown, testified that he did not come upon the scene until after Brown had allegedly shoved Danielle against the vehicle, while the plaintiffs testified that he was

---

[1]This criminal complaint against Brown was eventually dismissed for lack of probable cause.

[2]Danielle, who plaintiffs concede is of limited intellectual ability, was actually closer to seven and a half-months into her pregnancy.

present during the entire incident. Blevins testified that Danielle was crying after the incident but otherwise appeared unharmed. An ambulance was called to take Danielle to the hospital, where she was admitted for premature labor. Danielle's baby was eventually born healthy and nearly full-term. On September 7, 2007, plaintiffs filed the instant action in this case, alleging violations of federal and state law.

Defendants have presently moved for summary judgment, arguing that no genuine issue of fact exists regarding plaintiffs' right to recover against any of them. In the court's view, the summary judgment issues in this case are not particularly close ones. Plaintiffs have conceded, as they must, that their claims against the MDOC and those against Brown and Blevins in their official capacities are barred by Eleventh Amendment immunity. Moreover, plaintiffs concede that they did not file a notice of claim or take any other steps required to assert state law claims against defendants under the Mississippi Tort Claims Act.[3] Plaintiffs' state law claims are therefore due to be dismissed in their entirety. That leaves for resolution plaintiffs' Fourth Amendment claims against Brown and Blevins in their individual capacities.

To succeed on an excessive force claim under the Fourth Amendment, a plaintiff in the Fifth Circuit must demonstrate that (1) he suffered an injury, (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable. *Bazan v. Hidalgo County*, 246 F.3d 481, 487 (5th Cir. 2001). The Supreme Court emphasized in *Graham v. Connor*, 490 U.S. 386, 396-97, 109 S.Ct. 1865, 104 L.Ed.2d 443

---

[3]This case does not fit under any of the Miss. Code Ann. § 11-46-7(2) categories of claims which may be asserted against state employees outside of the scope of the MTCA. Section 11-46-7(2) does permit individual claims arising out of "any criminal offense," but, as noted previously, a state court found that no probable cause existed to charge Brown with any such offense.

(1989). that the "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene and must account for the fact that police officers are often forced to make split-second decisions about the amount of force necessary in a particular situation. The defendants' qualified immunity defense requires this court to determine (1) whether the plaintiffs have alleged a violation of a constitutional right and, if so, (2) whether the defendant's behavior was objectively reasonable under clearly established law at the time the conduct occurred. *Hampton v. Oktibbeha County Sheriff Dept.*, 480 F.3d 358, 363 (5th Cir. 2007).

In the court's view, the only actions in this case which arguably rise to the level of a constitutional violation are Brown's actions in allegedly slamming a visibly pregnant woman against a car. Plaintiffs concede that the MDOC officers had probable cause to stop their vehicle, given its close resemblance to the one in which Raspberry was reported to be driving. Moreover, Danielle conceded that she initially refused Brown's command for her to exit the vehicle. Under these circumstances, it does not strike this court as unreasonable that Brown would have forcibly pulled her from the vehicle. It is difficult for this court to imagine circumstances, however, in which it would be "objectively reasonable" for an officer to slam a pregnant woman belly-first against a vehicle, as two witnesses testified that Brown did in this case. This is particularly true when one considers that Brown was searching for Raspberry, a non-violent drug offender who was simply late in reporting for drug treatment.

The evidence before this court is clear that Danielle was a slightly-built young woman, and there was no testimony that she was attempting to flee at the time she was allegedly slammed against her mother's vehicle. Moreover, the plaintiffs' testimony that Brown stated that he didn't

4

"give a [expletive deleted]" about whether Danielle was pregnant leaves little doubt that triable fact issues exist regarding plaintiffs' Fourth Amendment claims against him. Brown argues that the allegations of the complaint are insufficiently specific to establish a constitutional violation on his part, but the court does not agree. The complaint clearly alleges, among other things, that Brown "slammed her belly- fetus - first into her mother's car," and the court concludes that the complaint sufficiently alleges a constitutional violation in this case.

This court can discern little basis upon which plaintiffs might assert constitutional claims against Blevins, however. It should initially be noted that there are very significant differences between the parties' testimony regarding Blevins' actions in this case. It is undisputed that Blevins was driving in a different vehicle than Brown, but, as noted previously, plaintiffs testified that Blevins' vehicle pulled up ahead of their Ford Mustang, while Blevins testified that he pulled up behind their vehicle. Moreover, plaintiffs assert that Blevins witnessed Brown slamming Danielle against her mother's vehicle, while Blevins testified that he only arrived on the scene later. Even under plaintiffs' version of events, the court concludes that there are no fact issues as to whether Blevins committed a constitutional violation in this case. It is true that Blevins is the only officer who knew Raspberry, and this fact did increase his responsibility to speak up and prevent any mistaken identity by his fellow officers. However, Danielle admitted that she refused Officer Brown's orders to exit the vehicle, and it therefore does not strike this court as being "objectively unreasonable" that Brown would have forced her to exit the vehicle, regardless of her identity.

Accordingly, even assuming that Blevins did witness Brown's actions in pulling Danielle from the vehicle (as he firmly denies) and failed to prevent them, the court would not conclude

5

that this constituted a constitutional violation. To reiterate, the only action in this case which arguably constitutes a constitutional violation is Brown's alleged act of slamming Danielle against a vehicle. Assuming that such occurred, this was a sudden act taken by Brown alone. Amanda testified that Blevins was the officer who checked her ID and notified the other officers that they had the wrong suspects, and it thus appears that he was acting in good faith to determine the plaintiffs' true identities.

In light of the foregoing, the court concludes that plaintiffs' claims against the MDOC and against Brown and Blevins in their official capacities are due to be dismissed on the basis of Eleventh Amendment immunity. The court concludes that triable fact issues exist regarding plaintiffs' Fourth Amendment claims against Brown individually, while plaintiff's claims against Blevins are due to be dismissed.

It is therefore ordered that the MDOC's and Blevins' motion to dismiss and/or for summary judgment [13-1] on the basis of Eleventh Amendment immunity is granted. Brown's motion [28-1] to dismiss official capacity claims against him is granted, while Brown's motion to dismiss [30-1] on the basis of qualified immunity is denied. Blevins' motion for summary judgment [21-1] on the basis of qualified immunity is granted.

So ordered, this the 3rd day of September, 2008.

/s/ MICHAEL P. MILLS
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**